McGILL BROS. *v.* SEABOARD AIR LINE RY.

CONNER v. SAME.

CONNER v. SAME.

VERDICTS SET ASIDE BECAUSE OF IMPROPER INFLUENCE ON JURY.—Trial Judge is in the atmosphere of the trial, has opportunity to estimate the character and intelligence of the jury, as well as of the person charged with improper conduct or corrupt dealing with them, and Appellate Court should require very strong proof of abuse of discretion before reversing order granting new trial on that ground. Verdicts for damages for burning over lands by railway company set aside because the foreman of the jury accepted entertainment from the claim agent of railway company at his hotel one night during the trial, and treated a number of the jurors to liquor after the verdicts, and thanked them for the same, it having been agreed that same jury should try another like case.

Before Hydrick, J., Lexington, February, 1906. Affirmed.

Three cases tried together: (1) McGill Bros. v. Seaboard Air Line Ry.; (2) James W. Conner v. same; (3) H. Wilmot Conner v. same. From order setting aside verdicts, defendant appeals.

*Messrs. Lyles & McMahan* and *Efird & Dreher,* for appellant. The former cite: Code 1902, 2734; Code of Proc., 286; 24 S. C., 487; 68 S. C., 46; 60 S. C., 77; 24 Am. & Eng. R. R. Cas., 6; 12 *Ibid.,* 667; 2 Strob., 416; 4 Rich., 594; Graham on New Trials, 66, 85; 38 S. C., 348; 2 Rich., 122.

*Messrs. Jno. T. Seibels, Melton & Belser* and *T. C. Sturkie,* contra, filed no argument.

September 17, 1906.   The opinion of the Court was delivered by

Mr. Justice Woods.   These three separate actions were brought to recover damages caused by a fire which burnt over the lands of the plaintiffs, alleged to have been set out by a locomotive of the defendant railroad company. James W. Conner claimed $400 damages for burning over 200 acres, H. W. Conner, by his guardian *ad litem,* $1,400 for burning over 700 acres, and McGill Brothers, $580 for the burning of timber, crude turpentine, etc., on 825 acres. The causes were tried together, and it was agreed by counsel that the same jury should also try the next case, Danville Lumber and Manufacturing Company and Rudolph Rorer against the same defendant, in which $4,800 damages were claimed for the same fire. This arrangement was made because it was deemed important for the decision of each case that the jury charged with it should inspect the premises, and all the cases being before one jury, one inspection would suffice for all. The sheriff was placed in charge of the jury while they were

making the inspection, and by consent of all parties Rorer, who was interested in the next case to be tried by the same jury, furnished dinner to the jurors and those who were allowed to accompany them.

The only issues were as to the origin of the fire and the amount of the damages. The jury found for James W. Conner $75, for H. W. Conner $100, and for McGill Brothers $50.. Thereupon, when the case of Danville Lumber and Manufacvturing Co. and Rudolph Rorer was called, though under agreement it was to be tried by the same jury, plaintiff's counsel, without explanation, moved for and obtained from the presiding Judge an order discontinuing that cause on payment of costs. Plaintiff's counsel having immediately thereafter commenced his argument for a new trial in these causes on the ground of gross insufficiency of the verdicts, the presiding Judge told him he did not care to hear argument, either as to the law or the facts on the motion; but if he cared to make a motion for a new trial, on the ground that the verdict of the jury was not above suspicion, or was improperly influenced, he would entertain that motion and give him time to make necessary investigation to present the facts to the Court.

Counsel for the defendant joining in the desire for an investigation, the Court forthwith had each juror called and examined him as to his conduct concerning the trial. As a result of the examination, the Circuit Judge set aside the verdicts on the ground "that some of the jurors had accepted the hospitality of W. C. Johnson, the claim agent of the defendant railway, so that the verdicts rendered may be open to the suspicion of having been improperly influenced." and by a separate order the claim agent, Johnson, was required to show cause why he should not be attached for contempt. The order discontinuing the case of Danville Lumber and Manf. Co. and Rorer *v.* Seaboard Railway, on payment of costs, was vacated and the case continued. The appeal is from the order granting a new trial.

We have not the least doubt the order of the Circuit Judge setting aside the verdicts should be sustained.

In the first place, the reasons for refusing to interfere with the discretion of a Circuit Judge in matters involving the purity of the jury box and the integrity of verdicts are peculiarly strong. He is in the atmosphere of the trial, and has opportunity to estimate the character and intelligence of the jurors, as well as of the person charged with improper conversation or corrupt dealings with them. He has opportunity also to consider the verdict in the light of the evidence and the sources from which the evidence comes, and determine whether the verdict has so little support as to indicate corrupt or improper influence. These and perhaps other things afford the trial Judge such superior means of coming to a just conclusion, that before disturbing his order on such a subject, an appellate Court should require very clear evidence of abuse of discretion.

In the second place, the admissions of the foreman and several other jurors so clearly showed improper intercourse between them and Johnson, the defendant's claim agent, that if the Circuit Judge had refused to set aside the verdicts, this Court would have regarded the refusal a clear abuse of discretion and reversed his judgment.

Johnson, the claim agent of the defendant, was known by the jurors to be present as a representative of the defendant, and interesting himself in the trial on defendant's behalf. With this knowledge, the foreman of the jury, while the trial was in progress, accepted his invitation to spend the night with him in his room at the hotel at Johnson's expense. Immediately after the verdicts were rendered, a number of the jurors, on the claim agent's invitation, repaired to his room and received thanks for the verdicts and accepted from him treats to liquor. Besides all this, after the trial, another juror spent the night with Johnson at the hotel at his expense. The treating and this last entertainment of a juror at the hotel, it is true, took place after the trial of the causes, but it was well known to Johnson and the jurors that the

trial of another case in which Johnson was interested as agent for the defendant was to be immediately entered upon, and these transactions throw a very strong reflex light on the entertainment of the foreman and the payment of his expenses at the hotel while the trial was in progress. Free entertainment for the night at a hotel is rarely tendered and still more rarely accepted even among intimate friends. Certainly no sane man could suppose for an instant that Johnson's attentions to these jurors and his expense on their account were prompted by personal attachment or benevolent impulse. His motive obviously was to influence them by these means to a favorable view of the side of the case in which he was interested. It is hardly less certain that the jurors who accepted these favors did so with the full consciousness that they were extended in the expectation of reciprocation on their part in making up their verdicts. If they did not know this, they were too little versed in human affairs to be capable of discharging any of the duties of jurors.

Every case of this kind must be decided on its own facts, and we think this case is too clear to require the aid of authority. The test is, has the fountain of justice been kept pure? Is the verdict the result solely of the honest deliberation of the jury on the cause as publicly developed at the trial, or is there reason to suppose that outside influences have entered into it as a factor. In the one case, the parties have had a fair trial, according to the law of the land. in the other, they have not.

In this case, the evidence is clear that the jury box was not free from improper influence, and there was not a fair trial.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.