NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the matter of the Estate of:

ANA MARIA NORMAN AKA: MA. ASUNCIO HERNANDEZ CRUZ,
*Decedent.*

---

CELIA LAW, in her capacity as Personal Representative of the
Ana Maria Norman Estate, *Plaintiff/Appellee*

*v.*

MAYANIN A. TOVAR HERNANDEZ, *Defendant/Appellant.*

No. 1 CA-CV 22-0244
FILED 12-13-2022

---

Appeal from the Superior Court in Yuma County
No. S1400PB202000109
The Honorable Mark W. Reeves, Judge

**VACATED**

---

COUNSEL

Richardson v. Richardson, P.C., Mesa
By William R. Richardson
*Counsel for Defendant/Appellant*

Focused Appeals PLLC, Mesa
By Austin Martineau
*Counsel for Plaintiff/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

_____

**T H U M M A**, Judge:

¶1            This appeal involves a dispute between estranged sisters. Plaintiff Celia Law, as personal representative for the estate of Ana Maria Norman, filed a petition against defendant Mayanin Adriana Tovar Hernandez alleging breach of fiduciary duty, statutory abuse of a vulnerable adult, unjust enrichment and quiet title of real property in San Luis, Arizona. Hernandez lives in Mexico, and Law had apparently visited her there before this dispute arose. Law's attempts to serve Hernandez are the focus of this appeal.

¶2            Typically, the date and manner when service is completed is clear. In this case, however, the court "found that service was complete on [Hernandez] by attempting to serve at [Hernandez'] last known address, sending pleadings first class by certified mail to the last known address, publishing in the paper, calling [Hernandez] and using a private investigator to attempt to contact" Hernandez. Law, however, did not show that presumptive methods of service were impracticable, meaning alternative service was improper. Thus, because the record does not establish Law properly served Hernandez, the court lacked jurisdiction over Hernandez. Thus, the denial of Hernandez' motion to set aside default judgment and dismiss the case is reversed and judgment is vacated.

## FACTS AND PROCEDURAL HISTORY

¶3            Although Law and Hernandez are biological sisters, as a child, Law was adopted by her aunt and uncle, Ana and Barry Norman. Law lives in North Carolina, while Hernandez has lived at the same address in Tulancingo, Hidalgo, Mexico, since the mid-1990s. Law and Hernandez met in North Carolina, at least once, in 2016. The record includes a sworn declaration by Hernandez that in 2005, Law came to her home in Hildago, Mexico. The record includes a picture from that visit, purporting to show Law, Hernandez and others.

¶4 For several years before Ana Maria Norman's death in February 2020, Hernandez cared for Norman at her house in San Luis, first in-person and then by hiring caretakers. In May 2020, Law was named personal representative for Norman's estate. In August 2020, Law filed the petition against Hernandez. Although the verified petition alleged on "information and belief" Hernandez "is a resident of Maricopa County, Arizona," nothing in the record suggests Hernandez ever lived in Maricopa County.

¶5 Before filing the petition, Law hired a private investigator to find Hernandez. The investigator's report, which was not filed with the court until July 2021, stated that "[n]umerous data base checks conducted on 06/30/2020 produced limited information about" Hernandez, adding the results were "consistent with the possibility that Hernandez may be a Mexican National." The report added that "[o]pen source checks . . . identified an individual named Adriana Mayanin Tovar Hernandez as a Professor in the State of Hildago, Mexico. Specifically, she is identified as the Regional Liaison for the Secretary of Education in Tulancingo, Hidalgo, Mexico," adding it "is not known if that person is identical" to Hernandez. The investigator's report provided a page from a telephone directory, listing a telephone number for Hernandez at the Secretary of Education and a mailing address there. The report added that the only street address in the United States associated with Hernandez was Norman's residence in San Luis.

¶6 Before a hearing on the petition, Law tried to serve Hernandez by publishing a Notice of Hearing on November 16, 17 and 18, 2020 in the *Yuma Sun*. That notice stated a telephonic hearing would be held December 8, 2020. This was the only proof of service Law filed with the court before the hearing.

¶7 Law and her attorney attended the December 8, 2020 hearing. When asked about service on Hernandez, Law's attorney said:

> [I]n an abundance of caution, we mailed and published according to the probate rules for notice. So we did that for the hearing date. We did try to personally serve the defendant and were unsuccessful, and then we also mailed to the home address and the post office box, where we know she is receiving mail, and that, we haven't had any response from that either. The mail hasn't been returned.

Although mentioning that Law had retained a private investigator who said Hernandez may be a Mexican national living in Mexico, Law's attorney made no mention that the investigator's report included contact information for Hernandez in Tulancingo, Hidalgo, Mexico, including a telephone number and work mailing address. Based on what the court was told, it found Law had made "reasonable attempts to locate" Hernandez such that service by alternative means was proper and complete.

¶8         After the December 8, 2020 hearing, Law filed a "proof of mailing," stating copies of the petition and notice of hearing "were mailed by first class mail on the 15th day of November, 2020 and certified mail on November 23, 2020 to" Hernandez at the street address and post office box for Norman's house in San Luis. The filing included a process server's certificate of non-service stating that, on Monday, November 23, 2020, at 4:44 p.m. (the week of Thanksgiving), he tried to serve Hernandez at the San Luis address. The certificate stated there was no answer or activity observed, the house was "[g]ated and locked, [and] mail on ground [was] labeled to Ana M. Hernandez De Norman," adding a neighbor "stated an[] elderly couple moved out a year ago, then a younger couple was last seen 3 months ago, names unknown." After that single attempt, the process server "discontinued attempting service."

¶9         Law then sought entry of default and default judgment, asserting Hernandez was in default after being served "in conformity with" Ariz. R. Civ. P. 4.1(k). In March 2021, an "Order of Default Judgment" was entered, invalidating a 2015 deed signed by Norman transferring the San Luis property to Hernandez and, instead, transferring the property to Law as personal representative and awarding Law about $535,000 against Hernandez.

¶10         Three months later, Hernandez moved to set aside the default judgment and to dismiss the case. Hernandez alleged she had not been served, never received any notice of the proceedings and only discovered what had happened when the locks of the San Luis house were changed. Hernandez stated that she had lived at the same Tulancingo, Hidalgo, Mexico address since 1994. Hernandez also attached Norman's death certificate, which Law as personal representative either had or could have obtained, listing Hernandez' mailing address in Tulancingo, Hidalgo, Mexico. Hernandez further stated she had provided Law with her phone number, email address and street address when visiting Law in North Carolina, and none of that information had changed. Hernandez then argued that, because she is a Mexican national, Law had to serve her under Ariz. R. Civ. P. 4.2 and to follow the Hague Convention. Hernandez also

4

provided facts disputing the substantive claims against her. Law opposed the motion, arguing the judgment was valid because Law "did not know" Hernandez' Mexico address "and—despite diligent efforts—was unable to locate her."

¶11 The parties presented oral argument on the motion, but no testimony was received. The court then denied Hernandez' motion, finding service by alternative means was complete. The order did not mention the private investigator's report stating Hernandez lived in Hidalgo, Mexico, and providing her telephone number and work mailing address. Instead, the order stated Law "did not have reason to know that [Hernandez] resided in Mexico."

¶12 Hernandez timely appealed from the resulting judgment. This court has appellate jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A) (2022).[1]

## DISCUSSION

¶13 Although the denial of a motion to set aside a default judgment generally is reviewed for an abuse of discretion, whether service of process was proper implicates whether a court has personal jurisdiction over a party, an issue reviewed de novo. *Ruffino v. Lokosky*, 245 Ariz. 165, 168 ¶ 10 (App. 2018). Law argues that the superior court's "findings of fact must be accepted as true and viewed in the light most favorable to upholding" the judgment, and this court "will not re-weigh evidence." However, there was no testimony provided at the hearing on Hernandez' motion, and there are no credibility findings in the order denying it. *See Volk v. Superior Court*, 235 Ariz. 462, 464 ¶ 1 & 470 ¶ 25 (App. 2014) (avowals of counsel are not evidence); *Quine v. Godwin*, 132 Ariz. 409, 412 (App. 1982) (argument of counsel is not evidence). In this case, because this court on appeal reviews the same record the superior court considered, the types of deference Law urges do not apply. *See, e.g.*, *Zimmer v. Peters*, 176 Ariz. 426, 430 (App. 1993) (declining to apply abuse of discretion review when the superior court's decision was based on the written record).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**¶14** "Proper, effective service on a defendant is a prerequisite to a court's exercising personal jurisdiction over the defendant." *Bank of New York Mellon v. Dodev*, 246 Ariz. 1, 10 ¶ 29 (App. 2018) (citation omitted). If service is not proper, the court never acquires jurisdiction over the party, *id.*, and any resulting judgment is void and must be vacated, *Ariz. Real Est. Inv., Inc. v. Schrader*, 226 Ariz. 128, 129 ¶ 6 (App. 2010). In addition, Arizona recognizes a strong preference to resolve cases on the merits. *See Flynn v. Campbell*, 243 Ariz. 76, 81 ¶ 10 (2017). As a result, "any doubts should be resolved in favor of the party seeking to set aside the default judgment." *Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 308 (1983).

**¶15** Law's petition seeks a money judgment, meaning "service of a copy of the petition and a copy of the notice of the initial hearing on that petition must be made on that person under [Arizona] Civil Rules 4, 4.1, and 4.2." Ariz. R. Prob. P. 11(c). As potentially applicable here, Law had to serve Hernandez under either Rule 4.1 or 4.2. Law maintains that the court correctly concluded Hernandez was properly served under Rule 4.1(k). When applicable, Rule 4.1(k) authorizes alternative means of service "within Arizona." Service of process outside of Arizona, however, is governed by Rule 4.2, with Rule 4.2(i) governing service of an individual in a foreign country.

**¶16** Beginning with Rule 4.2, Law argues that the Hague Convention does not apply when the address of the person to be served is not known. *See Cardona v. Kreamer*, 225 Ariz. 143, 145 ¶ 8 (2010). The record presented suggests Law knew Hernandez' address in Mexico, which had not changed since the mid-1990s. But even if the Hague Convention did not apply, Law still had to serve Hernandez, a Mexican national living in Mexico, under Rule 4.2(i), not under Rule 4.1(k). Although Law argues Hernandez "abandoned" Rule 4.2 because Hernandez did not press it on appeal, Law points to no alternative provision governing service on individuals in a foreign country. Nothing in the record establishes Law properly served Hernandez under Rule 4.2.

**¶17** Under Rule 4.1, Law did not meet her burden to prove that service by alternative means was proper. In substance, Law's argument is that Hernandez' last known address was not in Mexico and Law had no reason to know that Hernandez lived in Mexico. Before filing the petition, however, Law hired the private investigator claiming she did not know Hernandez' current address, negating any argument she knew Hernandez lived at the San Luis address.

¶18 Law asserts she hired an "expert investigator" to "obtain [Hernandez'] current address, . . . [b]ut the expert was unable to do so." The private investigator's search, however, provided Law substantial information that Hernandez was a Mexican national living in Tulancingo, Hidalgo, Mexico, as well as contact information. Among other things, the private investigator reported to Law in writing:

(1) That he could find no Social Security Number or exact date of birth for Hernandez, which "is consistent with the possibility that Hernandez may be a Mexican National."

(2) "Numerous data base checks conducted on 06/30/2020 produced limited information about Mayanin A. Tovar Hernandez. This is consistent with the possibility that Hernandez may be a Mexican National," including the possibility that she was "residing in Mexico."

(3) "Open source checks through Google identified an individual named Adriana Mayanin Tovar Hernandez in Tulancingo, Hidalgo, Mexico."

(4) "Open source checks for Mayanin A. Tovar Hernandez identified an individual named Adriana Mayanin Tovar Hernandez as a Professor in the State of Hidalgo, Mexico. Specifically, she is identified as the Regional Liaison for the Secretary of Education in Tulancingo, Hidalgo, Mexico. It is not known if this person is identical to Mayanin A. Tovar Hernandez who is the subject of this investigation."

(5) A website and a screenshot for the Tulancingo, Hidalgo, Mexico information for Hernandez.

(6) A copy of a telephone directory in Spanish (Directorio Telefonico) listing contact information and a telephone number, along with a work mailing address, for Hernandez in Hidalgo, Mexico.

(7) That "database checks produced limited information on Hernandez and open source checks identified a person with a similar name in Tulancingo, Hidalgo, Mexico, Hernandez may stay at the [San Luis] property only occasionally or part time."

Despite this significant information from Law's own investigator about Hernandez' location in Tulancingo, Hidalgo, Mexico, the record shows Law did not follow up. There is no suggestion that Law mailed anything to the address provided for Hernandez in Mexico. There is no suggestion that Law called the work telephone number provided for Hernandez in Mexico. In fact, there is no evidence Law did anything to follow up on the contact information provided by her private investigator to try to contact Hernandez in Mexico.

¶19 The court may allow alternative means of service if a party shows personal service is "impracticable." Ariz. R. Civ. P. 4.1(k)(1). Although impracticability does not mean impossibility, a party must show "that service would be 'extremely difficult or inconvenient.'" *Dodev*, 246 Ariz. at 10 ¶ 31. Moreover, proper service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Blair v. Burgener*, 226 Ariz. 213, 219 ¶ 19 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[P]rocess which is a mere gesture is not due process." *Mullane*, 339 U.S. at 315.

¶20 The record does not support an impracticability finding allowing alternative service, even assuming Rule 4.1 (not 4.2) applies here. Law's investigator provided Law a report showing Hernandez was a Mexican national, working in (and presumably living in or near) Tulancingo, Hidalgo, Mexico and providing her work mailing address and telephone number. Yet Law did not try to contact Hernandez using any of that information. This record cannot support a finding that Law showed impracticability that would have allowed the alternative means of service she sought to use. *See, e.g.*, *Ruffino*, 245 Ariz. at 169 ¶¶ 13-15 (affirming no reasonably diligent efforts finding where party, after identifying a specific

address, "did not make any effort to communicate," via mail, telephone or otherwise, with the defendant at that address) (citing cases).[2]

## CONCLUSION

**¶21** Because Hernandez was not properly served, the court lacked jurisdiction over her. Thus, the denial of Hernandez' motion to set aside default judgment and dismiss the case is reversed and the Order of Default Judgment was void and is vacated. Hernandez is awarded her taxable costs on appeal contingent upon her compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] Given this conclusion, the court need not (and expressly does not) address the arguments about Law's purported attempts to contact Hernandez by calling a cell phone, or on Hernandez' Facebook account, or whether she could have tried to find Hernandez by contacting any of their four siblings.