NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NEELANJANA BHAVNANI, *Plaintiff/Appellee*,

*v.*

DEEPANJANA MUKHERJEE, *Defendant/Appellant*.

No. 1 CA-CV 23-0467

FILED 10-31-2024

Appeal from the Superior Court in Maricopa County
No. CV2021-017691
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Jaburg & Wilk, P.C., Phoenix
By Roger L. Cohen, Kathi Mann Sandweiss
*Counsel for Defendant/Appellant*

Tiffany & Bosco, P.A., Phoenix
By James A. Fassold, Elise B. Adams
*Counsel for Plaintiff/Appellee*

Soderquist Law, PLLC, Chandler
By Carol Soderquist
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Angela K. Paton joined.

---

**F O S T E R**, Judge:

¶1 Defendant Deepanjana Mukherjee appeals the superior court's entry of default judgment against her for financial exploitation of a vulnerable adult. For the following reasons, this Court affirms the entry of default and the default judgment.

## FACTS AND PROCEDURAL HISTORY

¶2 Neelanjana Bhavnani and Mukherjee are daughters of Reba Mukherjee ("Mother"). After Mother's husband died in 2008, Mukherjee and Mother moved to Arizona. When they arrived, they lived together and Mukherjee helped care for Mother, including assisting with finances.

¶3 In December 2009, following erratic behavior by Mukherjee and at the insistence of Adult Protective Services, Bhavnani filed for guardianship and conservatorship of Mother. Bhavnani was appointed Mother's temporary guardian and conservator between January and May 2010, when a private fiduciary was appointed as permanent guardian and conservator.

¶4 Mother died in June 2018, still under guardianship and conservatorship, and Bhavnani was appointed as the personal representative of Mother's estate. While going through Mother's financial records in that capacity, Bhavnani discovered "gaps in the record and many accounts that had not been turned over to the conservator."

¶5 In November 2021, Bhavnani sued Mukherjee for financial exploitation of Mother, a vulnerable adult. Mukherjee, appearing on her own behalf, filed an answer with a handwritten caption titled "Response to Complaint." In June 2022, Bhavnani moved for discovery sanctions against Mukherjee for failing to provide an initial disclosure statement. *See* Ariz. R. Civ. P. 26.1(a), (f). After a scheduling conference, the court ordered Mukherjee to provide Bhavnani an initial disclosure statement by late July. After the deadline passed without Mukherjee providing the statement,

Bhavnani moved to strike Mukherjee's answer and applied for an entry of default as sanctions. *See* Ariz. R. Civ. P. 37(b)(2)(A)(iii), (vi); Ariz. R. Civ. P. 55(a)(2). A few days later, Mukherjee requested an extension to the deadline. The court denied Mukherjee's requested extension, struck her answer and entered default against her. Bhavnani moved for a default judgment, and the court set a default hearing to determine damages.

**¶6**        In January 2023, the court held the default hearing, which Mukherjee attended on her own behalf. During the hearing, the court admitted Mukherjee's stricken answer as evidence of her prior statements. The court granted judgment against Mukherjee in the amount of $860,516.69 in damages and $44,005.60 in attorneys' fees and costs.

**¶7**        Following the hearing, Mukherjee obtained counsel, who appeared and moved for a new trial, arguing Mukherjee did not receive a fair trial because she is a vulnerable adult incapable of representing herself. The motion was amended to include a statute of limitations defense for the first time. The superior court denied the motion.

**¶8**        Mukherjee timely appealed. This Court has jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

**¶9**        Mukherjee argues the default judgment was error because: (1) clear evidence showed she lacked the mental capacity to represent herself, (2) the claims were partially barred by statute of limitations, (3) the judgment "deviated from the claims and factual allegations" in the complaint and (4) the award relied on admissions that had been stricken from the record. Rulings on disclosure violation sanctions, motions for new trials and whether to set aside default judgments are reviewed for an abuse of discretion. *Vanoss v. BHP Copper Inc.*, 244 Ariz. 90, 100, ¶ 30 (App. 2018) (sanctions); *In re Estate of Long*, 229 Ariz. 458, 464, ¶ 22 (App. 2012) (denials for new trials); *Searchtoppers.com, L.L.C. v. TrustCash LLC*, 231 Ariz. 236, 241–42, ¶¶ 20, 23 (App. 2012) (setting aside default judgments). But constitutional issues are reviewed *de novo*. *Niehaus v. Huppenthal*, 233 Ariz. 195, 197, ¶ 5 (App. 2013).

## I.        The superior court had no duty to appoint Mukherjee counsel or to inquire further into her mental capacity.

**¶10**        "The right to a fair trial is a foundation stone upon which [Arizona's] present judicial system rests." *In re Estate of Long*, 229 Ariz. at 464, ¶ 23 (quoting *State v. Neil*, 102 Ariz. 110, 112 (1967)). But "[t]here is no

right to appointment of counsel in a civil proceeding." *Powell v. State*, 19 Ariz. App. 377, 378 (1973). This stems from the presumption that a person's "right to appointed counsel is recognized only where the litigant may lose his physical liberty if he loses the litigation." *State ex rel. Corbin v. Hovatter*, 144 Ariz. 430, 431 (App. 1985) (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981)). Further, "[c]ourts hold unrepresented litigants in Arizona to the same standards as attorneys and do not afford them special leniency." *Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (citing *Flynn v. Campbell*, 243 Ariz. 76, 83–84, ¶ 24 (2017)).

**¶11**       When unrepresented litigants are "insane," they "may sue or be sued, [but their] incapacity requires that [they] be protected, and to that end [they] should be represented by some one who may adequately enforce or protect [their] rights." *Cubbison v. Cubbison*, 45 Ariz. 14, 20 (1935). Further, "it is reversible error to enter a decree or judgment against an insane person [who was] not properly represented, unless it appears that [the] lack of representation was harmless." *Id.* "In the absence of allegations or facts [that] indicate that a hearing might be in order, the trial judge is entitled to gauge a party's competence by his personal conduct in court." *Smith v. Rabb*, 95 Ariz. 49, 57 (1963). But "if it appears from any of the proceedings that there is a serious question as to a party's competence, the duty devolves upon the trial court to direct a further inquiry into the matter." *Id.* at 56.

**¶12**       Neither party suggests the appropriate level of mental competency necessary for a defendant to proceed without the aid of counsel. But Arizona cases discussing the issue in various contexts help guide this Court's determination. When determining whether to apply a statute of limitations against a civil plaintiff of unsound mind, courts look at two scenarios: "(1) inability to manage daily affairs, and (2) inability to understand legal rights and liabilities." *Doe v. Roe*, 191 Ariz. 313, 326, ¶ 42 (1998). In parental termination cases, the court looks at "whether the parent is unable to understand the nature and object of the proceedings or assist in his or her defense." *Kelly R. v. Ariz. Dep't of Econ. Sec.*, 213 Ariz. 17, 22, ¶ 28 (App. 2006) (citation omitted). And in criminal cases, defendants are competent to stand trial if "they have sufficient present ability to consult with their lawyer[s] with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against them." *State v. Ibeabuchi*, 248 Ariz. 412, 416, ¶ 16 (App. 2020) (cleaned up) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Even when determining whether a nonlitigant witness is competent to testify, courts determine if "he is deprived of the ability to perceive the event about which he is to testify or is deprived of the ability to recollect and communicate with reference thereto." *Zimmer v. Peters*, 176 Ariz. 426, 429 (App. 1993)

(quoting *State v. Griffin*, 117 Ariz. 54, 57 (1977)). These cases reveal common requirements of reasonable understanding and a comprehension of the case's factual basis.

¶13        Mukherjee directs this Court to several filings indicating she is mentally incompetent. First, Mukherjee claims the pleadings show she was incompetent to represent herself and that Bhavnani knew this. She points to Bhavnani's complaint, which asserted that Mukherjee "made calls to the police accusing [Bhavnani] of holding her and [Mother] captive . . . with no food and water." Mukherjee contends that this "should have set off alarms" because of the possibilities that either she "was so fragile and dependent as to allow herself to be held captive" or that she "was imagining the captivity." Mukherjee also argues that the court should have been aware of her mental incapacity because of comments in her own answer. She points to "shocking assertions" she made against Bhavnani in her answer, including "sheer unconscionable torture" and depriving her of basic necessities, which she described in her answer as "a time [that] will live in infamy" when her "chances of survival were getting gloomier with the passage of time." She also claims that referring to her parents as "Daddy" and "Mommy" in her answer "reflect[ed] a sense of infantilism that should have sent off flares."

¶14        Second, Mukherjee points to her "strangely captioned" filings to show that she lacked the competency to represent herself: "Response to Ms. Grzenia's email rec'd 6.1.22 4:50p Objection to These 2 Subpoenas immediately"; "Docs I Turned in Dated 7.27.22 Should Have Been Titled 'DM's Objection to JF's Objection of 9.22.22 Extension'"; "The Plaintiff's Party Should be Sanctioned for JF's Failure to Follow Instructions"; and "'I Hear What You Are Saying but I Do Not Understand.'"

¶15        Third, Mukherjee contends that the court had documentation of her mental incapacity. The inventory and appraisal of Mother's estate submitted in the probate case listed Mukherjee as "an Adult Under Court-Ordered Treatment Pursuant to A.R.S. TITLE 36." Mukherjee bolsters this contention with other filings where she called herself a "vulnerable adult" and describes herself as "extremely delicate, permanently disabled, almost-destitute, downtrodden, attorneyless, familyless, computerless, copierless (since 2.17.22) homeless." She also seeks to introduce the Petition for Court-Ordered Evaluation and the Order for Treatment from the 2009 probate case for the first time on appeal, but this Court does not consider evidence that was not before the trial court. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 5 (App. 1990).

¶16 When Mukherjee presented these same arguments in her motion for a new trial, the superior court determined she had not raised a legal basis for a new trial. The court found Mukherjee "demonstrated that she possessed the cognitive capacity to understand and to comply with court rules and rulings." The court also stated it "had the opportunity to assess [Mukherjee's] audio demeanor" and made the following findings: "She was articulate. Her thought process was rational and coherent, not scattered. Her tone, ability to speak for herself, and responses to the [superior] [c]ourt's questions all conveyed that she understood." The record supports the court's findings and its denial of Mukherjee's motion for new trial.

## II.  Mukherjee waived her statute of limitations defense.

¶17 Next, Mukherjee argues that the superior court erred in awarding a default judgment against her because the statute of limitations had passed. Bhavnani claimed Mukherjee violated her duty to a vulnerable adult under A.R.S. § 46-456. The statute of limitations for those suits is two years after discovery of the cause of action. A.R.S. § 46-455(K). Here, Bhavnani sued in 2021 based on transactions occurring between 2008 and 2010, which she found after taking over Mother's estate in 2018. Under these facts, the statute of limitations would be in question. But Mukherjee raised a statute of limitations defense for the first time in her amended motion for new trial. Statutes of limitations are affirmative defenses that are waived if not timely raised. Ariz. R. Civ. P. 8(d)(1)(P); *Sparks v. Rep. Nat'l Life Ins. Co.*, 132 Ariz. 529, 541 (1982) (a statute of limitations defense was waived because defendants failed to raise it before the court issued its judgment); *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 302, ¶ 10 (App. 1999) ("The statute of limitations is an affirmative defense that is waived unless raised.").

¶18 Mukherjee contends her incompetency excused her failure to raise an affirmative defense. But, as shown above, Mukherjee was not entitled to appointed counsel, failed to retain counsel and must accept the consequences of her self-representation. *Homecraft Corp. v. Fimbres*, 119 Ariz. 299, 302 (App. 1978).

¶19 Mukherjee also argues, relying on American Jurisprudence 2d, that precluding her statute of limitations defense "places form over substance" because her failure was "simply a noncompliance with a technicality" and Bhavnani's complaint on its face made clear that the allegations were outside the two year limitations period so "there [wa]s no claim of surprise" warranting waiver. 61A Am. Jur. 2d *Pleading* § 272 (Oct. 2024). But as discussed above, that is not Arizona's law; in Arizona unraised

affirmative defenses are waived. Ariz. R. Civ. P. 8(d)(1)(P); *Sparks*, 132 Ariz. at 541. Arizona requires courts to apply the law as determined by the legislature and the Arizona Supreme Court. *Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31 (2013) ("The lower courts are bound by our decisions, and this [Supreme] Court alone is responsible for modifying that precedent."); *Hobson v. Mid-Century Ins. Co.*, 119 Ariz. 525, 529, ¶ 10 (App. 2001) ("This court [of appeals], of course, is bound by applicable supreme court authority."); *Speros v. Yu*, 207 Ariz. 153, 157, ¶ 16 (App. 2004) ("When the language of the statute is clear, we must follow its direction."). Accordingly, the superior court did not err by ruling that Mukherjee waived her statute of limitations defense.

### III. The default judgment did not differ in kind or exceed the amount requested in the complaint.

**¶20** Mukherjee makes several claims that the default judgment was improper.

**¶21** Mukherjee contends the default judgment deviated in kind from the complaint, violating Arizona Rule of Civil Procedure 54. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Ariz. R. Civ. P. 54(d). Any judgment that does is void. *S. Ariz. Sch. for Boys, Inc. v. Chery*, 119 Ariz. 277, 283 (App. 1978). The rule ensures defendants know the risks they face if the court enters a default order. *Kline v. Kline*, 221 Ariz. 564, 571, ¶ 27 (App. 2009). Mukherjee argues Bhavnani was bound solely to the specific transactions and amounts alleged in her complaint. But although Bhavnani specified several transactions, she also alleged that she "expect[ed] discovery to reveal additional money that [Mukherjee] took from [Mother]" and sought judgment "in an amount to be determined at trial."

**¶22** Here, the court's default judgment was in the form Bhavnani sought and did not exceed what was requested in the complaint. First, Bhavnani sought a monetary judgment, and the court awarded a monetary judgment. This case did not involve an order where the court granted a different kind of judgment than requested. *See, e.g., Villalba v. Villalba*, 131 Ariz. 556, 558 (App. 1982) (vacating default judgment that awarded a dissolution of marriage when the complaint sought only legal separation). Second, Bhavnani did not seek a known amount, but an amount that the court needed to determine. One purpose of a default damages hearing is to "determine the amount of damages." Ariz. R. Civ. P. 55(b)(2)(D)(ii); *accord Dairyland Ins. Co. v. Richards*, 108 Ariz. 89, 91 (1972) (approving a default judgment of $22,500 when the complaint's prayer was for "a sum [that] is

reasonable and just"). The superior court did not err in entering the judgment.

**IV.    The superior court properly determined the default judgment award.**

**¶23**    Mukherjee next contends the default judgment was not supported by sufficient evidence. She argues the court erred by basing more than half of its judgment award ($550,000 from Alliance Bank) on statements made in her stricken answer. She argues the court could not both strike her answer but then admit it as evidence to benefit Bhavnani.

**¶24**    "A party is bound by factual admissions or concessions made in its pleadings." *Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 109, ¶ 24 (App. 2016) (citation omitted); *accord Paul Schoonover, Inc. v. Ram Constr., Inc.*, 129 Ariz. 204, 205 (1981) ("The admission binds [the party] and is conclusive as to the admitted fact."). But even if Mukherjee's statements in her answer did not amount to a factual admission or concession, Bhavnani could still use Mukherjee's words against her. *See State v. Griffith*, 247 Ariz. 361, 365, ¶ 14 (App. 2019) (court properly admitted messages "made by and offered against a party-opponent"). Though the court struck Mukherjee's answer for the purposes of entering a default, it contained her statements and could be used as evidence. The court did not err in admitting Mukherjee's statements from her stricken answer.

**¶25**    Mukherjee's remaining arguments on the default judgment amount are based on the court's reliance on transactions not specifically listed in the complaint. But the complaint gave Mukherjee notice that Bhavnani would seek additional damages to be proved at trial. The court did not err in its award.

**CONCLUSION**

**¶26**    For the reasons above, the superior court's entry of default and judgment is affirmed.

**¶27**    Bhavnani requests attorneys' fees and costs on appeal under A.R.S. §§ 12-341.01, 12-349 and 14-1105. Mukherjee's actions on appeal were not unjustified or unreasonable, so this Court will not sanction her with attorneys' fees. *See* A.R.S. §§ 12-349 and 14-1105(A). Also, this action is not a contract action, but arises from the financial exploitation of a vulnerable adult, so this Court denies Bhavnani her attorneys' fees request. *See* A.R.S. § 12–341.01. Because Bhavnani is the successful party on appeal, she is

awarded her taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. A.R.S. § 12–341.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV